Good morning, Your Honors, and may it please the Court. I'm Paul Cross, and I'm here on behalf of the appellants. I'd like to address the two issues that are before you, the limitations question and the standing issue, that were the basis for the lower court's dismissal of the action on procedural grounds. The policy in question was enforced against the appellants in 2002. It was only due to the imminent enforcement, their imminent arrival of their 60th birthdays, that their employment ended. The undisputed facts in this record are that but for the mandatory retirement policy at age 60, neither appellant would have retired. There's declarations to that effect, and those facts were not contested. There was never an issue raised but that their decision to retire in the... Counsel, we have the standing doctrine, which is pretty powerful, and that is that you have to establish an injury in fact, and how can you be injured under a retirement scheme if you're still employed? We need some help on that. Well, in this case, their 60th birthdays were coming up in May of 2002, and April 15th in one case, and May of 2002 of the other case. But they made an election to retire before the impact of this law would have been directed to them. They chose to select a retirement date. They didn't choose to retire, Your Honor. I mean, suggesting that they elected to retire voluntarily is tantamount to suggesting that a person who's told that he's going to be shot on his 60th birthday and leaves prior to that time to avoid being shot and avoid being terminated, to use an analogous term, did so voluntarily. This was not a voluntary retirement. And the only facts in this record that the judge had to consider on the motion for summary judgment clearly established, it was uncontested, that their only decision to retire and to choose this date, which was a date that they each chose a date prior to April 1st, because under the system that was in effect, if they waited until their 60th birthday or May 1st, they would have gotten their retirement benefit based upon their years of service. But that's precisely the point. He voluntarily chose to retire at a date when his benefits would be greater than if he waited and they would be less. He made that choice. He elected the date at which he was going to exit from county employment and retire, but he did not voluntarily retire. The evidence before you in the record is that he protested. In fact, Sergeant Petchy wrote a memo three weeks before his elected exit date in which he told his captain, the personnel captain, this is a violation of my rights under the Equal Protection Clause. I protest the fact that you're forcing me to retire. But if I have to go, I'm going to choose this date in order to get a few extra dollars on my retirement benefit. What would have happened if he had remained? Well, he would have been as he got to his 60th birthday. He would have had two choices at that point. He's a sergeant or in the case of Renrich, a lieutenant. He would have either had to engage in insubordinate conduct. I'm not filling out my papers. Fire me. That's to suggest that two career officers in the sheriff's department would have had to be insubordinate to their commanding officers who are telling them to fill out these papers. Would the sheriff been forced to fire them? They would have been. They were told, yes, they would have been in effect had to have been fired. They would have left there. They would have forcibly removed from their position. There is no dispute in the record that they would have been forcibly removed from the department. Now, why should they go by doing that? They would have lost what the cost of living adjustment. Right. And it's not only the cost of living adjustment in that particular year, every year for the rest of their lives. The cost of living adjustments, their increases annually would be compounded onto the base of their 2002 retirement. So each, if it's 3 percent or 4 percent, whatever the COLA would be, would be compounded. So for the rest of their lives, they would have suffered a loss of benefits. They had no choice. If they had sued and they had won, they would have gotten those future damages. And then we get to the mitigation. If they had sued and they had won, hopefully their choice was to go back to work. They were seeking reinstatement. One of the issues that Judge Huck, the lower court, seemed very troubled by was the inequity of retiring and then coming back and filing a suit. I think that issue can and should have been addressed, not as a standing question, but as a remedy question. What's the appropriate remedy under the circumstances having chosen to exit four weeks, three weeks prior to your out date? Let me ask you another question with respect to the statute of limitations. When do you contend the cause of action accrued? The cause of action accrued either at the time they left or at the time that they, their 60th birthday. Does it make a difference that maybe, let's say, six months before they retire, they definitely decided that they were going to retire? No, because in these two gentlemen's case, they only decided to retire. They didn't decide to retire. They were forced to retire. They had no choice. That's their sworn statements uncontested in this record. In some other record, you might have an issue of fact as to whether or not they were actually thinking about retiring or not. I do want to bring to your attention a case that was decided about three days before our reply brief was decided, was submitted. And that's the case of Maldonado v. Harris. And in that case, it was a First Amendment 1983 action. And let me give you the site. That was 370. The counsel, the court rules require that you fill out three copies, serving one on your opposing counsel. The deputy clerk can give you the form for that. Okay. I will do that. But can I refer you to the context of the case? The court said, and this was a June 2004 decision, a more difficult question is whether Maldonado's facial challenge to the statute is barred by the statute of limitations. In that case, it had been argued that it was a one-year statute and he had blown it. In fact, whether a statute of limitations for 1983 actions can bar a facial challenge under the First Amendment to the state statute appears to be a question that we, that has not been considered conclusively resolved by any circuit court. We join the Fourth Circuit in expressing serious doubts that a facial challenge under the First Amendment can ever be barred by a statute of limitations. And then they go on to say we don't need to resolve that because they find that in his case, it was an injunction that had a continuing effect and that it applied. We conclude that the fact that the state court entered an injunction against Maldonado constituted continuing enforcement of the statute, such that he's allowed to raise a facial challenge at any time so long as it continues in force and effect. This case, in context of Lowrance, which while it was overruled or the law underlying it, was changed because of the changes in the law. The principles in Lowrance about the, that a facial challenge to a discriminatory law, that's discriminatory on its face, can be brought at any time, I think it applies. And it applies with even greater force given this Court's ruling in the Maldonado case, which adopts basically the same principle that facial challenges under Section 1983 to a continuing, in this case it was a First Amendment violation, can be brought. So to answer your answer, Your Honor, I think that this policy is clearly facially discriminatory. It says if you're hired before a certain date, you have to retire. If you're hired after a certain date, you don't have to retire at age 60. That's the clearest example, it would seem to me, of facially discriminatory law. And the Court's decision in Lowrance that was followed in other cases under the ADA, and I think this case in Maldonado adopts a similar principle in the First Amendment context, clearly indicates that a facial challenge to a policy such as this can be brought at any time. One other point, Your Honor, going back to your question, this action included a claim seeking not just relief on behalf of the individuals who were the appellants, but they were also seeking declaratory relief, a judgment that would affect not only themselves, but all their colleagues and deputies who were hired prior to April 1st, 1997. This was brought as a Rule 23 class action. It was not brought as a class action. It was brought on their behalf and also seeking declaratory relief as to the unconstitutionality of a policy which mandated retirement at age 60 for anybody hired prior to April 1st, 1997. And it seems to me that even if the Court were to find that their particular standing, because they chose to maximize their retirement benefit and mitigate their damages, they still would have standing to bring the question to the Court and have a ruling made on their behalf. Thank you, Counselor. Your time has expired. Thank you, Your Honor. Thank you. We'll hear from the County now. Good morning, Your Honors. Sheila Curtis for the defendants. First of all, Your Honor, every action that the County took was consistent with the state law governing employees, California Employee Retirement Law of 1937. When the law was enacted, safety members, law enforcement officers, and police officers were permitted to be mandatorily retired at age 60. I think we know the term of the plan. The question is when could an officer in the shoes of Lieutenant Winrich bring some sort of legal challenge? Well, the law … Certainly, there was a window somewhere, either it's already passed or he could have waited until he was actually mandatorily retired at age 60. Right. In terms of the statute of limitations issue, in 1997, when the County voted to opt out of the mandatory retirement plan under Government Code Section 31483, 31483 by its terms only permits counties to opt out of mandatory retirement for safety officers prospectively. And in our joint statement of uncontroverted fact, Council agrees to that. So when we opted out under the Government Code Section that permits counties to opt out 31483, you can only opt out of mandatory retirement for safety officers prospectively. At that same time, the County lobbied to get legislation SB1354 to have the law amended to apply retroactively, which was defeated. In 1997, when the resolution was passed to opt out, to opt out prospectively, at that time, plaintiffs in their depositions and in the uncontroverted statements acknowledged they were aware of it. However, in their depositions, they declared they didn't know in 1997 if they were going to want to retire at age 60. How old were they at that time? Fifty-five. Fifty-five. I don't think you've answered my question yet. I'm giving you plenty of time to get there. But the question to keep in mind was when could they have properly challenged this? 1997, the statute started to run because the federal law says. One-year statute. One-year statute of limitations under, but the accrual of the action is governed by federal law, and the cases state that the accrual of the action begins when the plaintiff is given notion, I mean, notice of the act, not upon impact of the act. So in 19- What case stands for that in a minute? Tell us. What case do you cite for that proposition? That's the, if I may get my, the Ricks case for one and the, I'm drawing a blank. Can I? Sure. The Ricks case, Portman v. County of Santa Clara. The cases that counsel relies on to argue that his clients faced an imminent threat of harm, the Quest v. Auburn case and the Hemp Industry cases were cases where there were newly promulgated ordinances and the plaintiffs went into court to seek declaratory relief before the ordinances were enacted because they faced severe civil and criminal penalties. So counsel's argument is there was no injury, in fact, because they actually retired. They weren't terminated. That standing is based on a threat of imminent harm. And the cases he relies on are cases where there's notice, the parties seek declaratory relief, and the courts rule that even though they haven't been harmed, the threat of harm is so imminent and great. Here, plaintiffs are alleging that five years after the enactment, when they decided they wanted to, when they decided they wanted to retire for financial reasons, that had they not retired, they would have been harmed by turning 60, and that's not the law. Do you contest that in 1997 that they had not made the decision to retire at that time? No. That's what they alleged in their depositions. When asked why they did. Was there a dispute about that now? No. There's no dispute now because in the joint statement they allege that they didn't know when the law was passed in 1997. Did the county contend that in 1997 they had made a decision that they were going to retire? Well, no, but had they sought declaratory relief, they would have had the option then of finding out their rights to retire. Why would anybody want to file a lawsuit when they're 55? I mean, lots can happen in those five years. Yeah, but the thing is when they were 55. Did they have to file it at that time? Yes, because they knew the very day that they turned 60, and this is in the evidence, they knew the day they turned 60 under the law. They were still working. They would have to retire. Right. They knew that day when it was passed. They wrote letters. They went to their association. Their association could have sought declaratory relief. They knew. How about a 45-year-old? Same rule? Same rule. When the law was passed in 1997. Whether you were 30, 35, 40, 45, 50, 55. If you were hired. You had to file a lawsuit within one year. But these plaintiffs that brought this case, it's not a class action. They knew they would have to retire. They started writing letters and looking into it, but then they stayed. The 40-year-old officer would have known that at 60 I've got to retire, so I better file my lawsuit now. Well, but as to these two plaintiffs. Well, you're advocating a rule, and apparently this rule is supposed to apply to everybody. It does. Correct. So whether they're 45 at the time or whether they're 55 or 58 at the time, they had one year to file a lawsuit. Yes. That's it. That's it. Okay. As I said. Anything further? Nothing further. Thank you, counsel. The case just argued will be submitted for decision. And we will now hear argument in M.J. Thank you.
judges: Hall, O'scannlain, Paez